**ALAZAN–APACHE RESIDENT ASSOCIATION, et al.,**
Plaintiffs,

v.

**SAN ANTONIO HOUSING AUTHORITY,**
et al., Defendants.

Civ. No. SA–94–CA–0106.

United States District Court,
W.D. Texas,
San Antonio Division.

Jan. 31, 1995.

Thomas A. Guajardo, Law Offices of T.A. (Tony) Guajardo, San Antonio, TX, Clint Bolick, U.S. Dept. of Justice, Civ. Rights Div., Educational Opportunity Div., Washington, DC, Scott G. Bullock, William H. Mellor, III, Institute for Justice, Washington, DC, for Alazan–Apache Resident Ass'n, Our Casas Resident Management Council, Inc., Diana Castillo, Elva Barajas, Blanca Ozuniga, Mary Alice Maciel.

Timothy J. Daniels, San Antonio, TX, Ricardo J. Navarro, Denton, McKamie & Navarro, San Antonio, TX, Victoria Guerra, Denton, McKamie & Navarro, P.C., San Antonio, TX, for San Antonio Housing Authority, Christina L. Garcia, Charles C. Andrews, Jr., Kenneth H. Willenberg, Pablo Escamilla, Laura Calderon, Apolonio Flores, Frank E. Hornsby, Jr.

Winstanley F. Luke, U.S. Attys. Office, San Antonio, TX, for Henry G. Cisneros, Joseph Schuldiner.

## ORDER

ORLANDO L. GARCIA, District Judge.

On this date came on to be considered the United States Magistrate Judge's Memorandum and Recommendation, filed in this cause on November 30, 1994; and plaintiffs' objections filed December 15, 1994.

■ When a party objects to a Memorandum and Recommendation the Court is required to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). *See also Longmire v. Guste*, 921 F.2d 620, 623 (5th Cir.1991) (party is "entitled to a *de novo* review by an Article III judge as to those issues to which an objection is made"). Such a review means that the Court will examine the entire record, and will make an independent assessment of the law.

Plaintiffs are the Alazan–Apache Resident Association (AARA), Our Casas Resident Management Council (Our Casas), and four residents of the Alazan–Apache Courts who are also officers of AARA. Plaintiffs brought the present suit seeking to manage and ultimately to own the Alazan–Apache Courts, a public housing development, pursuant to Sections 20 and 21 of the United States Housing Act of 1937, 42 U.S.C. §§ 1437r and 1437s (the Act). Plaintiffs sued the San Antonio Housing Authority and its officials (SAHA) alleging SAHA had unlawfully denied Plaintiffs' rights to resident management of the Alazan–Apache Courts. Plaintiffs also sued the Secretary of the Department of Housing and Urban Development and the Assistant Secretary for Public and Indian Housing (HUD) alleging that they had failed to intervene to vindicate plaintiffs' rights to resident management pursuant to their duties under 24 C.F.R. § 964.9 (1994). Plaintiffs ask this Court, *inter alia*, to declare that they have the right to assume resident management duties and to direct defendants immediately to undertake good faith negotiations with plaintiffs leading to resident management.

The parties agreed to submit legal issues which they say must be resolved initially by the Court. These legal issues are addressed in plaintiffs' Motion for Partial Summary Judgment, SAHA's Motion for Summary Judgment and Motion to Dismiss, and HUD's Motion to Dismiss.

Plaintiffs argue (1) that the Act creates an enforceable federal right of public housing residents to manage their developments; (2) that the Act requires public housing authorities and HUD to facilitate such management operations; (3) that the legislative history and administrative interpretation of the Act demonstrate that Congress intended to confer certain rights upon plaintiffs through the Act; (4) that the Act creates a private right of action against both the federal and non-federal defendants; and (5) that plaintiffs have a claim against the non-federal defendants under 42 U.S.C. § 1983.

Defendants argue that the Plaintiffs are not eligible under the Act to participate in resident management. Defendants also argue that the Act imposes no duties on them and creates no private right of action. They interpret the legislative history to reflect that

Congress merely preferred certain activities rather than intended to create an enforceable right. Defendants also argue that plaintiffs have failed to exhaust administrative remedies and that plaintiffs must bring their claim under the Administrative Procedure Act. The Magistrate Judge concurred with defendants' arguments.

FED.R.CIV.P. 12(b)(6) authorizes the filing of a motion to dismiss a case for failure to state a claim upon which relief can be granted. A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Doe v. State of Louisiana,* 2 F.3d 1412, 1416 (5th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1189, 127 L.Ed.2d 539 (1994). The motion will be granted when "the pleader makes some allegations that show on the face of the complaint some insuperable bar to relief." *United States v. Uvalde Consolidated Indep. Sch. Dist.,* 625 F.2d 547, 549 n. 1 (5th Cir.1980), *cert. denied,* 451 U.S. 1002, 101 S.Ct. 2341, 68 L.Ed.2d 858 (1981).

■ The Act provides:

As a condition of entering into a resident management program, the elected resident council of a public housing project shall approve the establishment of a resident management corporation.... The corporation shall be a nonprofit corporation organized under the laws of the State in which the project is located, and the tenants of the project shall be the sole voting members of the corporation.

42 U.S.C. § 1437r(b)(1). Only qualifying resident management corporations may contract for management responsibilities or home ownership. 42 U.S.C. §§ 1437r(b)(4), 1437s(a)(1). The regulations are in accord. *See* 59 Fed.Reg. 43622, 43637 (1994) (to be codified at 24 C.F.R. § 964.7) (resident management corporation is the entity that *proposes* to enter into a contract to manage one or more management activities of a housing authority); 59 Fed.Reg. 43622, 43637 (1994) (to be codified at 24 C.F.R. § 964.11) (as long as proper procedures are followed, the hous-

ing authority shall recognize the resident council); 59 Fed.Reg. 43622, 43642 (1994) (to be codified at 24 C.F.R. § 964.225) (resident councils interested in contracting with a housing authority must establish a resident management corporation that meets the requirements for such a corporation; housing authorities shall negotiate with *corporations* seeking to contract to provide management services).

Plaintiffs' complaint affirmatively states that Our Casas is a corporation whose board of directors consists "of individuals from public housing developments throughout San Antonio." Plaintiffs' Complaint at 3 and 9. Our Casas' articles of incorporation state that the board of directors shall be voting members. Therefore, tenants outside the Alazan–Apache Courts are voting members of the corporation in violation of 42 U.S.C. § 1437r(b)(1). Plaintiffs' complaint also states that the AARA is not a corporation at all, but an unincorporated association. Plaintiffs' Complaint at 2.

The Court therefore concludes that no plaintiff in this cause is eligible to commence management operations or even to negotiate for management operations because no plaintiff is a Texas nonprofit corporation whose sole voting members are tenants of the Alazan–Apache Courts.

■ Plaintiffs argue in their objections that the Magistrate Judge overlooked the factual basis of their complaint: that SAHA had continually and unlawfully thwarted plaintiffs' right to create a resident management corporation, primarily by failing to provide free office space for the resident council at the Alazan–Apache Courts. Assuming the truth of this assertion, at the most it shows that SAHA has not consulted with the tenants or provided appropriate guidance to assist them in establishing and maintaining a tenant management corporation. *See* 24 C.F.R. §§ 964.11, 964.17; 59 Fed.Reg. 43622, 43637 (1994) (to be codified at 24 C.F.R. § 964.11. Neither the Act nor the regulations require that the housing authority provide free office space to tenant organizations. Nor do they provide any exception to the requirement that only a qualified resident

management corporation can enter into a resident management contract. 42 U.S.C. § 1437r(b)(4). Further, plaintiffs do not allege that SAHA's failures to provide free office space or to provide guidance to the resident groups have prevented plaintiffs from filing articles of incorporation and by-laws of the type required by the Act. Plaintiffs are certainly free to organize in whatever manner they wish. They have chosen organizational structures, however, that render them ineligible to participate in management.

■ Plaintiffs assert that HUD's dereliction was to fail to require SAHA to negotiate with plaintiffs as required by 24 C.F.R. § 964.9(b). That regulation, however, applies only if a housing authority fails to negotiate with a resident management *corporation*. This is consistent with the Act and other regulations requiring the formation of a resident management corporation as a prerequisite to management negotiations.

The bulk of plaintiffs' objections concern their argument that Congress intended the Act to create an enforceable federal right to resident management and ownership of public housing. Although the arguments on each side are fascinating and it is tempting to wade into them, the Court need not engage in the rigorous exercise of divining Congressional intent. The Act clearly details the requirements for the resident management program and the entities that are qualified under the program to negotiate for and enter into a management contract. Because plaintiffs have not shown that they have met the statutory prerequisites that entitle them to judicial relief, this Court lacks jurisdiction to entertain this lawsuit. *Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975); *O'Hair v. White*, 675 F.2d 680, 686 (5th Cir.1982).

As required by 28 U.S.C. § 636(b)(1)(C), the Court has conducted an independent review of the entire record and a de novo review of the matters raised by the objections. The Court concludes that plaintiffs' objections lack merit, and that they should be overruled. The Court further concludes that the Memorandum and Recommendation is an accurate statement of the facts and a correct analysis of the law relating to plaintiffs' standing.

Accordingly, it is ORDERED that plaintiffs' objections are OVERRULED, that the United States Magistrate Judge's Memorandum and Recommendation regarding plaintiffs' standing is ACCEPTED pursuant to 28 U.S.C. § 636(b)(1). It is further ORDERED that plaintiffs' motion for partial summary judgment is DENIED, that HUD's motion to dismiss is GRANTED, and that SAHA's motion for summary judgment and motion to dismiss are GRANTED.

### REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

O'CONNOR, United States Magistrate Judge.

Pursuant to the order of referral of the above-styled and numbered cause to the undersigned United States Magistrate Judge and consistent with the authority vested in United States Magistrate Judges under the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 1(d) of the Local Rules for the Assignment of Duties to United States Magistrates, effective January 1, 1994, in the Western District of Texas, the following report is submitted for your review and consideration.

#### I. *Jurisdiction*

Jurisdiction is noted under 28 U.S.C. § 1346 and 28 U.S.C. § 2201.

#### II. *Statement of the Case*

Plaintiffs are public housing tenants and tenant organizations seeking to manage and ultimately to own the Alazan–Apache Courts. Plaintiffs allege they have unsuccessfully attempted to take the necessary first steps toward resident management of the Alazan–Apache Courts pursuant to 42 U.S.C. §§ 1437r and s. Plaintiffs filed this lawsuit against the San Antonio Housing Authority ("SAHA") and its officials claiming the SAHA has thwarted the Plaintiffs' attempts at resident management of the Alazan–Apache Courts. Further, Plaintiffs sued the Department of Housing and Urban Development ("HUD") and its officials claiming HUD has failed to intervene to vindicate the Plain-

tiffs' rights to manage public housing. The parties have agreed that certain legal issues must be resolved initially by the Court. The parties have each filed dispositive motions based on these legal issues.[1]

### III. *Issues*

The pending legal issues the parties have agreed to initially submit to the Court are as follows:

(1) Whether Sections 20 and 21 of the United States Housing Act (42 U.S.C. §§ 1437r and 1437s) create enforceable federal rights to resident management and ownership of public housing.

(2)(a) Whether Section 20 of the United States Housing Act (42 U.S.C. § 1437r) creates a private right of action against federal defendants to enforce the resident management statute.

(b) Whether Section 20 of the United States Housing Act (42 U.S.C. § 1437r) creates a private right of action against non-federal defendants to enforce the resident management statute.

(3) Whether plaintiffs have stated a claim for which relief may be granted under 42 U.S.C. § 1983 against non-federal defendants.

(4) Whether plaintiffs have stated a claim for which relief may be granted against federal defendants.

### IV. *Arguments and Conclusions of Law*

Plaintiffs contend the Housing and Community Development Act, 42 U.S.C. §§ 1437r and 1437s confers upon residents of public housing an enforceable federal right to manage and own their housing under the conditions set forth in the statute. Plaintiffs argue that the plain meaning of the Act, the legislative history of the Act, and administrative interpretation of the Act clearly show that the right to manage and own their housing is conferred by the Act upon residents of public housing and that corresponding duties are imposed by the Act upon public housing authorities. Plaintiffs further assert that the Act creates a private cause of action against both federal and non-federal Defendants and that Plaintiffs have a cause of action against the non-federal Defendants under 42 U.S.C. § 1983.

Defendants counter Plaintiffs' arguments by asserting that none of the Plaintiffs are eligible under the statute to participate in resident management. Defendants also argue that the statute imposes no obligations on them and that no private cause of action exists. Defendants disagree radically with Plaintiffs' interpretation of legislative intent. Defendants also argue that Plaintiffs have failed to exhaust administrative remedies and that any cause of action brought by Plaintiffs must be brought pursuant to the Administrative Procedure Act, 5 U.S.C. § 701–706.

■ An analysis of the principal issues in this case must begin with an attempt to construe the language of the statute to give effect to the intent of Congress. *See United States v. American Trucking Assns.*, 310 U.S. 534, 542, 60 S.Ct. 1059, 1063, 84 L.Ed. 1345 (1940). Legislative intent is determined primarily by looking at the wording of the statue, and secondarily by looking at legislative history and contemporaneous regulatory interpretations. *See Save Our Community v. U.S.E.P.A.*, 971 F.2d 1155, 1163 (5th Cir. 1992); *Chevron, U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–43, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *Texas v. U.S.*, 761 F.2d 211, 221 n. 8 (5th Cir.1985).

■ Plaintiffs urge that the use of the word "shall" as used in the statute, expresses the mandatory nature of the statute, thereby conferring a right on residents to manage and own public housing and a corresponding duty on the housing authorities to allow management and ownership.[2] It is true that the

---

1. Plaintiffs filed a Motion for Partial Summary Judgment, Defendants, SAHA filed a Motion for Summary Judgment and Motion to Dismiss, and Defendant, HUD, filed a Motion to Dismiss. All of these dispositive motions address the legal issues the parties have agreed to submit to the Court.

2. The statute provides that a "resident management corporation that qualifies under this section ... shall enter into a contract with the public housing agency establishing the respective rights and responsibilities of the corporation and public housing agency." 42 U.S.C. § 1437r(b)(4).

word "shall" normally indicates a mandatory intent. *See Sierra Club v. Train,* 557 F.2d 485, 489 (5th Cir.1977). However, in looking at the wording of the statute as a whole it is clear that the mandatory duty to which the word "shall" refers is placed upon the resident management corporation rather than on the housing authorities. Plainly stated, the statute indicates that a resident management corporation must enter into a contract with the housing authority if it is to assume a management role. The use of the word "shall" is mandatory only in the sense that in order for a resident management corporation to manage, it must enter into a contract with the housing authority which sets forth rights and responsibilities of the parties. As suggested by the federal Defendants herein, if Congress had intended to make the statute mandatory in the sense urged by Plaintiffs, the statute would have read something like: "A public housing agency, after negotiation, shall enter into a contract with a resident management corporation that qualifies under this section." Likewise, the use of the word "shall" in the resident ownership section of the statute does not establish a right of ownership, but merely sets up prerequisites to be met before ownership can be accomplished.

█ Plaintiffs have cited to numerous references in the legislative record in support of their argument that Congress intended to create enforceable rights to resident management and ownership of public housing. Plaintiffs have referenced matters relating to a version of the bill that was never passed and have relied heavily on comments in the Congressional Record. However, there are indications in the Congressional Record that both support the Plaintiffs' argument and refute it. Moreover, official committee reports, and not comments in the Congressional Record, are considered the authoritative source in interpreting legislative history. *See Garcia v. U.S.,* 469 U.S. 70, 76, 105 S.Ct. 479, 483, 83 L.Ed.2d 472 (1984). The Senate Committee Report states that the bill would "allow the resident management corporation to enter into a contract with the public housing agency establishing the corporations' rights and responsibilities". This language does not indicate an intention that tenants be given a right to manage, but rather describes the resident management provision as permissive in nature.

Plaintiffs contend that administrative interpretation of the statute evidences an intent that resident management is mandatory. Plaintiffs refer to numerous administrative provisions which use the mandatory word "shall". Further, Plaintiffs point to provisions which establish an informal HUD appeal process by which tenant groups can challenge the failure of housing authorities to negotiate in good faith. The provisions cited by Plaintiffs do not indicate a mandatory intent. The provisions merely require housing authorities to "consult" and "be supportive" of tenant organizations and to negotiate with such organizations. Furthermore, HUD has interpreted the resident management contract process as permissive rather than mandatory. In the preamble to 24 C.F.R. § 964.35(b), HUD states that the purpose of the statute is "not to compel a PHA to enter into any particular contract, but is to afford every possible encouragement and impetus to the expeditious conclusion of agreements between PHAs and resident management corporations". The regulation at 24 C.F.R. § 964.11 states that "[i]t is HUD's policy to encourage tenant participation in the management of public housing, as may be found appropriate by PHAs after consultation with tenants". Thus, it is this Court's opinion that the legislative intent was not to create a right in resident management corporations to manage and own public housing.

█ This Court is further of the opinion that even if the statute created a right to manage public housing, Plaintiffs could not enforce such right by suing the federal government or the public housing authority. The test for determining whether a statute creates an implied private right of action is set forth in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). The four factors recognized by *Cort* are as follows: (1) is the Plaintiff one of the class for whose special benefit the statute was enacted? (2) is there any indication of legislative intent either to create such a remedy or to deny one? (3) is it consistent with the under-

lying purposes of the legislative scheme to imply such a remedy for the Plaintiff? (4) is the cause of action one traditionally relegated to state law, in an area basically the concern of the states, making it inappropriate to infer a cause of action based solely on federal law? *Id.* at 78, 95 S.Ct. at 2088. The cases decided subsequent to *Cort* have plainly stated that the Court's focus must be on the intent of Congress. *See Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 377, 102 S.Ct. 1825, 1838, 72 L.Ed.2d 182 (1982).

The *Cort* test cannot be met in the case herein. As previously set forth in this opinion, the legislative history shows no intent to create an enforceable right to manage in tenant organizations. And, there is no indication that Congress intended to create a private right of action against either the federal or the non-federal Defendants. Further the resident management statute was not for the special benefit of Plaintiffs herein. Plaintiffs allege they seek the benefits of resident management. The benefit Congress sought to confer by virtue of the statute was to encourage increased resident management of public housing "as a means of improving existing living conditions". 42 U.S.C. § 1437r(a). The purpose as stated in the regulations is to create "a positive living environment" and contribute "to the successful operation of public housing". 24 CFR § 964.1. The Plaintiffs herein are merely incidental beneficiaries of a statute that has much more all-encompassing goals. *See Cannon v. University of Chicago,* 441 U.S. 677, 690–94, 99 S.Ct. 1946, 1954–56, 60 L.Ed.2d 560 (1979). Additionally, finding an implied cause of action would not be consistent with the overall statutory scheme. The right to manage, which Plaintiffs seek to enforce, is not consistent with the good faith negotiation and government encouragement of resident management as set forth in the statute.

■ This Court is also of the opinion that Plaintiffs do not have a cause of action against the housing authority pursuant to 42 U.S.C. § 1983. In order to state a claim under 42 U.S.C. § 1983, Plaintiffs must: (1) allege a violation of rights secured by the constitution or laws of the United States, and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 2254, 101 L.Ed.2d 40 (1988). However, § 1983 does not provide a cause of action for violation of a federal statute where the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983 or where Congress has foreclosed such enforcement of the statute in the enactment itself. *See Wright v. City of Roanoke Redevelopment and Housing Authority,* 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987).

■ In determining whether the statute creates an enforceable right within the meaning of § 1983, the Court must first look at whether the provision was intended to benefit the Plaintiff. If so, then the Court must determine whether the statute merely reflects a congressional preference for certain kinds of conduct rather than a binding obligation on the governmental entity or if the interest the Plaintiff asserts is so vague that it is unable to be judicially enforced. *See Wilder v. Virginia Hospital Assoc.,* 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455 (1990).

■ It is clear that the statute merely reflects a congressional preference for certain kinds of conduct rather than a binding obligation. Again, as discussed above, this Court is of the opinion that the statutory language of 42 U.S.C. § 1437r and s does not confer on resident management corporations a right to force public housing authorities to transfer management rights and responsibilities from the housing authority to the resident management corporation. In their brief, the non-federal Defendants highlight the provisions of the statute and the regulations which show an intent to encourage, but not require, resident management. Furthermore, the provisions and regulations are too indefinite to create enforceable rights in resident management groups. Therefore, Plaintiffs cannot state a cause of action against the non-federal Defendants under 42 U.S.C. § 1983.

Both Defendants assert that Plaintiffs are not qualified under the statute to bring a cause of action if, in fact, a cause of action exists. The resident management statute provides that as a condition of entering into a resident management program, the elected resident council shall approve the establishment of a resident management corporation and the tenants of the project shall be the sole voting members of the corporation. 42 U.S.C. § 1437r(b)(1). Only a qualified resident management corporation can enter into a resident management contract. 42 U.S.C. § 1437r(b)(4). The two Plaintiff organizations herein are the Alazan–Apache Resident Association (AARA) and Our Casas Resident Council (Our Casas). Plaintiffs have alleged that AARA is an unincorporated association. Therefore it is not qualified under the statute to enter into a resident management contract. Our Casas is not qualified under the statute because tenants of the project are not the sole voting members as required by the statute. Plaintiffs have plead that the Board of Directors of Our Casas consists of individuals from public housing developments throughout San Antonio. Therefore, tenants outside the Alazan–Apache Courts are voting members of Our Casas in violation of the statute. Thus, neither of the organizational Plaintiffs is eligible to proceed under the statute.

Defendants also claim Plaintiff's cause of action should be dismissed because review of a final agency action must be brought under the Administrative Procedures Act, 5 U.S.C. §§ 701–706. Any challenge to a final decision of HUD must be brought under the Administrative Procedures Act. Plaintiffs are essentially seeking judicial review of HUD's action and therefore must challenge it under the Administrative Procedures Act. *See Latinos Unidos De Chelsea v. Secretary of Housing and Urban Development,* 799 F.2d 774, 791 (1st Cir. 1986).

### V. *Recommendation*

Based on the above discussion, this Court recommends that Plaintiffs' Motion for Partial Summary Judgment be DENIED, that Defendant HUD and its officials' Motion to Dismiss be GRANTED, and that Defendant San Antonio Housing Authority, et al.'s Motion for Summary Judgment and Motion to Dismiss be GRANTED.

### *INSTRUCTIONS FOR SERVICE AND NOTICE OF RIGHT TO OBJECT/APPEAL*

The United States District Clerk shall serve a copy of this United States Magistrate Judge's Report and Recommendation on all the parties by mailing a copy to each of them by Certified Mail, Return Receipt Requested. Pursuant to 28 U.S.C. § 636(b)(1)(B) (Supp. 1982) and Rule 4(b) of the Local Rules for the Assignment of Duties to United States Magistrates, any party who desires to file objections to this report must file written objections to the Report and Recommendations within ten (10) days after being served with a copy. The objecting party must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report shall bar him from a *de novo* determination by the District Court. *See generally United States v. Raddatz,* 447 U.S. 667, 673–676, 683, 100 S.Ct. 2406, 2411–2413, 2416, 65 L.Ed.2d 424 (1980); 28 U.S.C. § 636(b)(1)(B) (Supp.1982). Additionally, *any failure by a party to file written objections to the proposed findings and recommendations contained in this report within ten (10) days after being served with a copy shall bar such party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court, unless such party validly alleges grounds of plain error or manifest injustice. Deloney v. Estelle,* 679 F.2d 372, 373 (5th Cir.1982); *Nettles v. Wainwright,* 677 F.2d 404, 408–410 (5th Cir.1982) (Unit B. *en banc* ).

SIGNED and ENTERED this 30th day of November, 1994.